UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RONALD SEATON,

               Plaintiff,               Case No. 1:08-cv-1131

v.                                               Honorable Robert J. Jonker

UNKNOWN SOVA et al.,

               Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated at the Oaks Correctional Facility (ECF). In his amended *pro se* complaint (docket #7), he sues the following ECF employees: Resident Unit Officer (unknown) Sova, Sergeant (unknown) Surma, Assistant Resident Unit Supervisor (unknown) McCrary; an unknown party named as "ECF Shift Commander," Corrections Officer (unknown) Picardat, former Assistant Resident Unit Supervisor (unknown) Schiebner, Hearing Investigator (unknown) Schiebner, Resident Unit Manager Robert Sanders, Resident Unit Manager Jason Thomas, Inspector (unknown) Shockley, Grievance Coordinator M.E. McDonald, Assistant Deputy Warden Rick Sharp, Classification Director M. Haske, Deputy Warden T. Ball, and Warden Cindi Curtin. He also sues Michigan Department of Corrections (MDOC) Director Patricia Caruso, Administrative Law Judge Elizabeth Buren, Prisoner Affairs Manager James Armstrong and Office of Policy and Hearings Administrator Richard Stapleton.

Plaintiff's complaint concerns a major misconduct conviction. Plaintiff claims that on July 3, 2008, Defendant Sova abused her authority to deprive him of yard privileges by ordering him to return to his cell. Plaintiff alleges that he asked Sova to state the operating procedure giving her the authority to command him to return to his cell. Plaintiff alleges that Sova's supervisor, Defendant McCrary, stated that he did not want to get involved and walked away. When Sova failed to respond to Plaintiff's inquiry, he proceeded to the yard. Defendant Picardat, the yard officer, ordered Plaintiff to return to his cell. When Plaintiff insisted upon speaking to a higher authority and refused an order to "cuff-up," Picardat summoned other corrections officers and forced handcuffs on Plaintiff's wrists. Plaintiff claims that ECF Shift Commander approved his placement in temporary segregation. Several hours after he was placed in segregation, Defendant Surma presented

Plaintiff with a major misconduct ticket written by Defendant Sova for disobeying a direct order. (*See* 7/3/08 Major Misconduct Report, docket #1-3.) Plaintiff disputed the ticket, claiming that Sova had not given a valid reason for ordering him to return to his cell.

Plaintiff claims that Defendant Hearing Investigator Schiebner collected evidence for his upcoming misconduct hearing in a prejudicial manner, such that he collected and submitted to the hearing officer only such evidence as would support the charge. Following an administrative hearing on July 15, 2008, the Hearing Officer, Defendant Buren, made the following findings of fact:

> On 7/3/08 at approximately 1423 hours, Officer Sova opened Seaton's cell door so his Bunkie could go back in the cell. It was half time on the yard. Seaton came out of the cell when the Bunkie went in. Even though prisoners may be allowed to come out during half-time, Seaton did not tell Officer Lemire that he wanted to come out during the 1400 round so Officer Sova ordered him to return to his cell. Seaton heard the order and told Officer Sova that he was going out to the yard. Seaton walked out to the yard. Seaton did not immediately return to his cell. Seaton was not risking serious physical injury by returning to his cell. Seaton was physically able to walk back to his cell. Seaton was not in the process of complying with a prior order that conflicted with the order to return to his cell. The order was reasonable. Seaton is guilty of the charge.

Based upon those facts, Buren found Plaintiff guilty of the offense. (*See* 7/15/08 Major Misconduct Hearing Report, docket #1-3.) Plaintiff was sanctioned with twelve days of detention.[1] Plaintiff sought a rehearing arguing, among other things, that Sova's order was invalid because there was no rule or policy that required him to give Officer Lemire advance notice that he wanted to exercise his yard privileges. He further claimed that the hearing officer failed to identify the rule or policy that authorized Sova to issue a direct order when the Plaintiff did not pose a threat to the safety or security of the facility. (7/28/08 Request for Rehearing, docket #1-3.) Defendant Stapleton denied Plaintiff's request for rehearing on October 13, 2008. (*Id.*)

---

[1] Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated good-time credits in certain cases. *Id.*

Plaintiff contends that Defendants Sanders and Thomas placed him in administrative segregation on July 15, 2008, the same day that he was found guilty of the misconduct charge, without a hearing on his security classification.

Plaintiff attempted to grieve issues surrounding his misconduct conviction, which were rejected by Defendants Shockley, McDonald, Sharp and Haske at Step I on the ground that decisions made by a hearings officer in a misconduct proceeding are non-grievable. *See* MICH. DEP'T. OF CORR., Policy Directive 03.02.130(F)(2). Defendants Ball and Curtin upheld the rejection at Step II and Defendant Armstrong upheld the rejection as Step III. Plaintiff contends that Defendants conspired to reject his grievance by misapplying the grievance policy.

Plaintiff also alleges that on April 26, 2007, more than a year before the misconduct proceedings discussed above, Defendant ARUS Schiebner falsely alleged in a major misconduct report "that she was authorized by department of corrections to enforce posting housing unit rule by issuing a command to follow the rule." (Am. Compl., 6.)

Plaintiff brings the following claims arising from Defendants' alleged conduct:

> (1) Assault and Battery/False Imprisonment, (2) cruel or unusual punishment, (3) punishment inflicted without due process or in violation of [the] equal protection clause, (4) abridgement of right to petition government to redress grievances, (5) violation of right to be free from ex post facto law, (6) deprivation of right to fair and impartial hearings; (7) abridgement of right to be free from fraudulent or falsified documents placed in prisoner file.

(Am. Compl., 2.) Plaintiff seeks declaratory and injunctive relief, including the expungement of the misconduct charge from his prison file and restoration of the good time credits forfeited as a result of his misconduct conviction. He also seeks monetary damages.

## Standard of Review

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**Discussion**

A. **Misconduct Conviction**

Plaintiff's claims against Defendant Sova, McCrary, Surma, Hearings Investigator Schiebner, Buren and Stapleton concerning the misconduct charge and proceedings, implicate the Due Process Clause. Plaintiff contends that Sova had no grounds for ordering him back to his cell. He alleges that "by writing the misconduct ticket she implied [that] she was empowered by [the] MDOC to issue commands on her own initiative, and without restraints." (Am. Compl., 4.) In other words, Plaintiff contends that Sova's order to return to his cell was invalid because it was not directly supported by a rule or policy.

The starting point for any discussion of the procedural due process rights of a prisoner subject to a disciplinary proceeding is *Wolff v. McDonnell,* 418 U.S. 539 (1974). In *Wolff,* the Supreme Court held that prison disciplinary proceedings must meet minimal due process requirements by (i) giving inmates advance written notice of charges at least 24 hours prior to the disciplinary hearing; (ii) allowing the inmate to call witnesses and present documentary evidence in the inmate's defense; and (iii) providing the inmate with a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Wolff*, 418 U.S. at 563-69. "[N]ot much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst., Walpole v. Hill,* 472 U.S. 445, 455 (1985)). The Supreme Court in *Hill* held that the requirements of due process are satisfied if "some evidence" supports the prison disciplinary board's decision to revoke good-time credits. *Hill*, 472 U.S. at 455. In determining whether a decision of a prison disciplinary board is supported by "some evidence", a federal court is "not required to examine the entire record, make

an independent assessment of the credibility of witnesses, or weigh the evidence." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Williams,* 63 F.3d at 486 (citing *Hill,* 472 U.S. at 455-56) (emphasis added).

The requirements of *Wolff* were satisfied in this case. Plaintiff was given advance written notice of charges at least 24 hours before the disciplinary hearing, he was permitted to present evidence in his defense and he was provided with a hearing report, which contained a statement of evidence relied on by the hearing officer and the reasons for her decision. Furthermore, the uncontroverted evidence showed that Plaintiff disobeyed Defendant Sova's direct order to return to his cell. The hearing officer reasonably concluded that Plaintiff was guilty of the offense because he admittedly refused to comply with Sova's order and lacked a valid defense, e.g., he was not given a conflicting order, he was not risking injury by complying with the order, and he was physically capable of returning to his cell. While Plaintiff contends that Sova's order was invalid because it was not supported by a specific rule or policy, "this court will not interfere with the discretion of prison authorities to define offenses under their internal rules and to assign offenses in particular cases." *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003) (citing *Turney v. Scroggy,* 831 F.2d 135, 139-40 (6th Cir. 1987)). Moreover, the constitution does not require that every order issued by a prison guard be supported by a rule, policy or procedure. Accordingly, Plaintiff fails to state a due process claim against Defendants Sova, McCrary, Surma, Hearings Investigator Schiebner, Buren and Stapleton arising from his misconduct conviction.[2]

---

[2]Moreover, Defendants Hearing Officer Buren and Hearings Administrator Stapleton are immune from Plaintiff's claims for monetary damages. The Sixth Circuit, recognizing that a Michigan hearing officer has adjudicatory functions spelled out by statute in the nature of an administrative law judge, has held that hearings officers are entitled

Plaintiff further claims that the misconduct conviction violated his rights under the Ex Post Facto Clause. The Ex Post Facto Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981); *see also Collins v. Youngblood*, 497 U.S. 37, 42 (1990) ("[A]ny statute which . . . makes more burdensome the punishment for a crime, after its commission, is prohibited as ex post facto.") (internal citation and quotation marks omitted). The purpose of the clause is to protect citizens against a "lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, 450 U.S. at 30. Plaintiff appears to argue that his ex post facto rights were violated when the disobeying-a-direct-order infraction was used to punish him for participating in yard privileges. His allegations simply do not implicate the Ex Post Facto Clause. Plaintiff does not allege that his punishment for the misconduct conviction somehow was increased after he committed the offense. Plaintiff, therefore, fails to state a claim under the Ex Post Facto Clause.

To the extent Plaintiff alleges a violation of his equal protection rights, he also fails to state a claim. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). While Plaintiff asserts a violation of his equal protection rights, he fails to allege any facts whatsoever in support of his

---

to absolute judicial immunity in relation to actions within the officer's authority. *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988); MICH. COMP. LAWS §§ 791.251-255. *See also Williams v. McGinnis*, Nos. 02-1336, 02-1837, 2003 WL 245352, at *2 (6th Cir. Jan. 31, 2003) (recognizing that Michigan's prison hearings officers are entitled to absolute immunity); *Thompson v. Mich. Dep't of Corr.*, No. 01-1943, 2002 WL 22011, at *1 (6th Cir. Jan. 2, 2002) (same); *Gribble v. Bass*, No. 93-5413, 1993 WL 524022, at *2 (6th Cir. Dec. 16, 1993) (same).

claims. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, Plaintiff fails to state a constitutional claim arising from his July 15, 2008 misconduct conviction for disobeying a direct order.

Plaintiff also alleges that on April 26, 2007, more than a year before the misconduct proceedings discussed above, Defendant ARUS Schiebner falsely alleged in a major misconduct report "that she was authorized by department of corrections to enforce posting housing unit rule by issuing a command to follow the rule." (Am. Compl., 6.) Plaintiff does not make any further allegations against ARUS Schiebner or the April 26, 2007 misconduct charge. Plaintiff appears to challenge the April 26, 2007 misconduct charge on the same ground as the subsequent misconduct charged issues by Defendant Sova. For the reasons discussed above, Plaintiff fails to state claim against Defendant ARUS Schiebner regarding the April 26, 2007 misconduct report.

### B.     Use of Restraints

Plaintiff claims that he was subjected to an "assault and battery" when he was placed in restraints by Defendant Picardat after he refused to return to his cell. Plaintiff specifically alleges, "After several officers arrived on the scene [Picardat] grabbed me and forced handcuffs on my wrists." (Am. Compl., 5.) Assault and battery is a state-law tort claim. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims where there would be no surviving federal claims for the court to decide. *See Landefeld*

*v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998).

To the extent Plaintiff's allegations of assault and battery implicate the Eighth Amendment, he fails to state a claim. The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton infliction of pain are those that are "totally without penological justification." *Id.*

Plaintiff's claim involving the use of restraints must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g.*, *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley*, 475 U.S. 312, should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful

response. *Id.* (citing *Whitley*, 475 U.S. at 321); *accord McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990).

Applying these standards, federal courts have held that physical restraints are constitutionally permissible where there is penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at *1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995). Plaintiff's claim fails because it is clear from his allegations that there was a penological justification for the use of restraints. Defendant Picardat used force to restrain Plaintiff only after he refused orders to return to his cell. Plaintiff does not allege that the officers used excessive force to place him in restraints or that he suffered any physical injury as a result of the incident. Further, Plaintiff's claim for emotional injuries is barred by 42 U.S.C. § 1997e(e), which precludes any claim by a prisoner "for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Id. See also Hardin-Bey v. Rutter*, 524 F.3d 789, 795-96 (6th Cir. 2008); *Taylor v. United States*, 161 F. App'x 483, 486-87 (6th Cir. 2007); *Jarriett v. Wilson*, 162 F. App'x 394, 400 (6th Cir. 2005); *Oliver v. Sundquist*, No. 00-6372, 2001 WL 669994, at *1 (6th Cir. June 7, 2001); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000). Accordingly, Plaintiff fails to state a claim against Defendant Picardat.

**C.      Segregation**

Plaintiff further alleges that he was subject to false imprisonment when ECF Shift Commander placed him in temporary segregation on July 3, 2008 and Defendants Sanders and Thomas later continued his placement in segregation on July 15, 2008. Like assault and battery, false imprisonment is a state tort claim, and, thus, is not cognizable in federal civil rights action. *See*

*Pyles*, 60 F.3d at 1215. However, Plaintiff's claim of false imprisonment also can be liberally construed as implicating the Eighth and Fourteenth Amendments. Plaintiff alleges that he spent over ninety days in segregation after he received the misconduct charge.

To establish an Eighth Amendment claim, the prisoner must show that he was deprived of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Restrictions that are restrictive or even harsh, but are not cruel and unusual under contemporary standards, are not unconstitutional. *Id.* Thus, federal courts may not intervene to remedy conditions that are merely unpleasant or undesirable. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347; *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Although it is clear that segregated prisoners are denied certain privileges, Plaintiff does not allege or show that he was denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000); *Collmar v. Wilkinson*, No. 97-4374, 1999 WL 623708, at *3 (6th Cir. Aug.11, 1999).

Plaintiff also fails to state a claim under the Fourteenth Amendment Due Process Clause. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the Due Process Clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 910, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly

found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Plaintiff has failed to make any allegations whatsoever that his approximately ninety-day stay in segregation was "atypical and significant." Consequently, the court concludes that no liberty interest is implicated by his placement. Plaintiff, therefore, fails to state a claim against Defendants ECF Shift Commander, Sanders and Thomas.

### D. Grievance Process

Plaintiff's claims against Defendants Shockley, McDonald, Sharp, Haske, Ball, Curtin and Armstrong concern the administrative grievance process. While Plaintiff contends that Defendants' rejection or denial of his grievances abridged his right to petition the government for redress, the Sixth Circuit and other circuit courts have held that there is no constitutionally protected right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Moreover, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,*

461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no constitutional right to file grievances, he fails to state a claim against Defendants Shockley, McDonald, Sharp, Haske, Ball, Curtin and Armstrong.

### E. Supervisory Liability

Plaintiff fails to make specific factual allegations against Defendant Caruso, other than that she was responsible for all Department of Corrections final decisions and orders, as well as department policies governing the administrative grievance process and segregation standards. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to allege that Defendant Caruso engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

F. **Motion for Declaratory Judgment**

Plaintiff has filed a motion for declaratory judgment (docket #8). Because the Court is dismissing Plaintiff's action for failure to state a claim, his motion will be denied as moot.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). In addition, Plaintiff's motion for declaratory judgment will be denied as moot.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  July 10, 2009            /s/ Robert J. Jonker
                                 ROBERT J. JONKER
                                 UNITED STATES DISTRICT JUDGE